Hermann v. Guttenberg.    63 N. J. L.

FREDERICK W. HERMANN ET AL., PLAINTIFFS IN ERROR,
v. THE TOWN OF GUTTENBERG IN THE COUNTY OF
HUDSON ET AL., DEFENDANTS IN ERROR.

Submitted July 12, 1899—Decided November 20, 1899.

1. Incorporated cities, boroughs, towns and villages, as well as townships,
   are recognized by the constitution as classes for legislation. Laws
   limited to either of such classes will not violate the constitutional
   prohibition of private, local or special laws "regulating the internal
   affairs of towns and counties."

2. The courts cannot inquire whether a municipality or class of munici-
   palities is titular only. The classification of the legislature in that
   regard is conclusive.

3. A statute providing for the funding of existing debts for street im-
   provements in incorporated towns, is a general law within the consti-
   tution.

On error to the Supreme Court. For opinion of the Su-
preme Court, see 33 *Vroom* 605.

For the plaintiffs in error, *Randolph, Condict & Black*.

For the defendants in error, *Corbin & Corbin*.

The opinion of the court was delivered by

COLLINS, J.    Chapter 40 of the laws of 1898 (*Pamph. L.,*
*p.* 63) authorizes the town council or other governing body
of any town in this state to provide by a bond issue for the
payment of all bonds and improvement certificates issued by
said town for or on account of any street improvement or
improvements, and for the payment of interest due thereon,
and of any judgments recovered on any such bonds or im-
provement certificates, and makes it the duty of such town
council or other governing body to order to be raised by
annual taxation the interest and not less than two per centum
of the principal of the bonds to be issued.

The board of councilmen of the town of Guttenberg in the
county of Hudson, a town with a special charter enacted

before the constitutional amendments of 1875 (see *Pamph. L.* 1859, *p.* 199; *Pamph. L.* 1864, *p.* 332; *Pamph. L.* 1875, *p.* 612), adopted a resolution for such a bond issue, which was removed to the Supreme Court by *certiorari* and there affirmed. The prosecutors have now brought writ of error on the judgment of affirmance. The chief ground of attack on the resolution is the supposed invalidity of the statute on which its rests, it being argued that such statute violates the constitutional prohibition of local or special laws regulating the internal affairs of towns. The objection is twofold—first, that the statute grants to a class of municipalities, arbitrarily selected, powers that in their nature are general; and secondly, that it further limits its operation to past indebtedness of a particular character.

On the first head, the opinion read for the Supreme Court is ambiguous, and, as one of the reasons assigned for holding the act, in that aspect, general, will not bear scrutiny, the decision is not authoritative. The subject is very important and demands elucidation. While the learned judge, who spoke for the Supreme Court, expressed his opinion that there could be valid legislation limited to towns incorporated by that title, he also thought that the challenged law could be upheld as extending to all towns, including " cities, boroughs, townships and villages." In this we think he was wrong. The word " town " is variant in meaning and must be interpreted *ab extra.* In its primitive sense the word denotes a collection of inhabited houses, whether with or without governmental powers. Of course, such is not the sense of the word in the statute before us, which, in the nature of the powers granted, is limited to incorporated towns. In England, prior to the settlement of this country and down to the time of its securing independence, large towns were generally incorporated, either by royal charter or by act of parliament. Local government in other cases was parochial. The colonists in New England limited the word " parish " to church authority and gave to the word " town " a new meaning, akin to that denoted by the ancient British township. They applied it,

irrespective of urban or rural characteristics, to a territory with definite boundaries in which local government was exercised. These towns became *quasi*-corporate political divisions, and to this day form the units of state government. They are nearly pure democracies, the powers of the selectmen being mainly executive. Of course, many of the large towns, using the word in its primitive sense, have particular incorporation. In the provinces of New Jersey, as in other colonies where the more important political division was the county, the town, sometimes called township and sometimes called precinct, became a political division, varying mainly from the New England type in the larger powers vested in the representative township committee to the deprivation of the people, but still leaving much to direct vote at "town-meeting," a term still persistent in our statutes. Some of these towns had special charters and some were divided into wards, but all were substantially alike. By an act passed February 21st, 1798 (*Pat. L., p.* 276), the inhabitants of every township, precinct and ward within the state were constituted a body politic and corporate in law, with a designated name as a township and with uniform powers and regulations. Such a general township law, enlarged as the growth of the state has demanded, has ever since subsisted and still subsists. As population became more dense many towns, again using the word in its primitive sense, were specially incorporated, and in their acts of incorporation were variously styled cities, boroughs, villages and towns. In some cases, perhaps generally in cities, they absorbed all municipal powers; in other cases they remained integral parts of townships with localized special powers. A good example of the latter class is the town of Bordentown, incorporated as a borough in 1825 (*Pamph. L., p.* 95), given a mayor and council in 1849 (*Pamph. L., p.* 35), changed in name to a city in 1867 (*Pamph. L., p.* 536), yet remaining always for some purposes within township authority. *State* v. *Troth,* 5 *Vroom* 377 ; *S. C.,* 7 *Id.* 422. Some townships, while retaining the township organization and name, were given, by special enactment, larger

powers than those of the general act. Thus the case stood in New Jersey when the constitution was amended in 1875. One amendment inserted in article 4, section 7, of the constitution, a new paragraph, as follows: " II. The legislature shall not pass private, local or special laws in any of the following enumerated cases; that is to say: * * * Regulating the internal affairs of towns and counties; appointing local offices or commissions to regulate municipal affairs. * * * The legislature shall pass general laws providing for the cases enumerated in this paragraph and for all other cases which, in its judgment, may be provided for by general laws." This provision soon came before the courts for interpretation. In the first case, decided in 1878, the question raised was whether or not cities were within it. The alternative suggested apparently was that the provision extended only to towns specially incorporated *eo nomine,* then so few in number as to make it absurd to suppose that they alone were intended. The Supreme Court held that cities were towns within the meaning of the passage cited. *Van Riper* v. *Parsons,* 11 *Id.* 1. That case went no farther, but, having been followed in the Supreme Court at the same term, a writ of error in another cause brought the same question to this court. Then the much more plausible argument was advanced that townships only were meant; but it was unanimously held otherwise, and it was declared by Chief Justice Beasley, as the opinion of the court, that " the term ' town ' in the passage stands as a generic designation, embracing townships as well as cities and all other places corporate established for local government of the same grade as these, and also those of an inferior order, if any such there be." *Pell* v. *Newark,* 11 *Id.* 550, 555. More concisely stated by the present Chief Justice in this court, the term, as there used, includes " all kinds of municipal corporations, formed for local government other than counties." *Stout* v. *Glen Ridge,* 30 *Id.* 201, 203. This result was reached by a consideration of the mischief previously existent and the evident purpose of the remedial amendment, and was consonant with the broad rule of inter-

pretation properly given to a fundamental law. Our statutes generally necessitate a narrower interpretation, although the Supreme Court has, in one case, applied the word "town," generically, for no other reason than, under supposed necessity, to save a statute's constitutionality. *Brown* v. *Town of Union*, 33 *Id.* 142. If it is plain from a statute that the word "town" is therein used to denote municipalities differently incorporated, that meaning will be accorded it. *Stout* v. *Glen Ridge*, 30 *Id.* 201, reversing 29 *Id.* 598. And even the primitive meaning of the word, or its congener, village, may control the interpretation of a statute. *Long Branch Commission* v. *Dobbins*, 32 *Id.* 659. The true rule of statutory interpretation of a term so inexplicit in meaning is to look first at the context and next to the occasion and necessity for the law. *Banta* v. *Richards*, 13 *Id.* 497. If it can be seen that all towns are not intended, and there is no indication that more are intended than the class called towns by incorporation, there is no ground to go beyond that class in applying a statute. Such is the case with the act now before us. Only such towns as, by their grant of power, raise taxes by order of a representative body and not by vote of the people are within its provisions. No reason appears for extending it beyond the class expressly named, to wit, towns so incorporated. Therefore, the right so to classify for general governmental purposes is broadly presented.

Classification by appropriate characteristics is constitutionally permissible. *Hammer* v. *State, ex rel. Richards,* 15 *Vroom* 667. Forms of incorporation may afford such characteristics. This was early perceived. In *Anderson* v. *City of Trenton*, 13 *Id.* 486, 487, Mr. Justice Dixon said, in the Supreme Court, by way of illustration: "Doubtless a law embracing all cities or all townships would be constitutional, for those bodies, because of their marked peculiarities, are by common consent regarded as distinct forms of municipal government and so forming classes by themselves." Later, in upholding a tenure of office act limited to cities, this court adjudged that cities form a proper class for all governmental

legislation. *New Brunswick* v. *Fitzgerald,* 19 *Id.* 457. That the logical result of this decision is that every other recognized form of municipality may constitute such a class was declared in the Supreme Court, by Mr. Justice Depue, in *Johnson* v. *Asbury Park,* 29 *Id.* 604. In affirmance, on error, it was not found necessary to approve this deliverance, but it was not disapproved. *S. C.,* 31 *Id.* 427. By the decision boroughs were upheld as a constitutional class for legislation on licenses for revenue. In *Crookall* v. *Matthews,* 32 *Id.* 349 ; affirmed, 33 *Id.* 799, in this court, it was decided that townships form a proper class for legislation affecting the term of office of assessors.

These adjudications lead to a comprehensive decision in favor of the constitutional right of the legislature to classify towns by their style of incorporation, at least to the extent hereinafter to be stated, and for such a result there seems to be sound reason.

At the time of the amendments of 1875 there had long been existent in this state, and generally, various classes of incorporated municipalities higher than townships. They were cities, boroughs, villages and towns so incorporated. The first two-named classes were derived from English proto-types. In England when a town had been an episcopal see, it was generally incorporated as a city, otherwise as a munici-pal borough. This last must not be confounded with a parliamentary borough, which was simply a town whether corporate or not, entitled to representation in parliament, and which often was not co-extensive with the municipal borough of the same name. A municipal borough differed from a city in no governmental essential. In this country the two styles of corporations have been generally retained, and the differ-ence between them is largely one of nomenclature. Large towns are eventually incorporated as cities, but the converse is not true. While usually a growing town has been content to first be a borough, there are many cases of original incor-poration, as cities, of places less populous than many boroughs. On the whole, the difference is one of magnitude, but the two

classes often have members indistinguishable in characteristics. In this country, too, the incorporating of villages—*i. e.*, small towns—was a very common practice long before the amendments.    In the "Standard Dictionary" will be found, "Incorporated village (local U. S.), a small town with limited corporate powers exercised by a board of trustees." A few such villages existed in this state.    South Orange (*Pamph. L.* 1869, *p.* 645) and Irvington (*Pamph. L.* 1874, *p.* 623) are examples.    In this state also, as in many others, there had long prevailed a style of incorporating municipalities simply as towns.    It has been said that such towns formed an intermediate class between cities and boroughs, and doubtless in recent legislation, for the incorporating of towns, they have been so regarded.  *Stout* v. *Glen Ridge, ubi supra.*    But such has not always been the case with towns specially incorporated.    Frequently they embraced a considerable territory with a scattered population, and were semi-rural in character.    Usually their organization was simpler than boroughs, although they frequently, by supplements to their charters, took on complex form.    Many towns, however, in their original incorporation, differed from boroughs or cities in little but the corporate style.    The borough of Princeton was incorporated, out of parts of townships in two counties, by the name of "The Mayor, Recorder, Aldermen and Assistants of the Borough of Princeton," under a charter whose title was "An act for incorporating the town of Princeton." *Pamph. L., Priv. Acts* 1813, *p.* 7.    It would be hard to find any essential difference between that borough, or the city of Bordentown, and the municipality called Morristown, incorporated under the title of town, with a mayor and aldermen and common council.  *Pamph. L.* 1865, *p.* 819.    Many towns corporate, like Guttenberg, had no mayor, but, as far as I have examined, all had a town council as the governing body. The classes named comprised all the municipal corporations of this state of which I have knowledge, except a few commissions, such as that at Long Branch (*Pamph. L.* 1867, *p.* 987) and that in Hackensack (*Pamph. L.* 1868, *p.* 564).    Com-

missions to regulate municipal affairs are expressly referred to in the prohibitory amendment and seem to form a class by themselves. That the various municipalities mentioned were recognized as classes by the framers of the constitutional amendments appears in the amendments themselves, for in article 1 was inserted, as a new paragraph, the following:

"19. No county, city, borough, town, township or village shall hereafter give any money or property, or loan its money or credit to or in aid of, or be directly or indirectly the owner of any stock or bonds of any association or corporation."

While, as was pointed out in *Pell* v. *Newark, ubi supra,* the same word may be used in different senses in the constitution, and, therefore, this collocation does not militate against the generic use of the word "towns" in the other amendment, still, as it was made with reference to a subject of general concern and undoubtedly referred only to corporate capacity, it is strongly suggestive that the framers of the amendments expected that all municipal governmental legislation would be classified according to the varying forms of incorporation, and we are of the opinion that, as incorporated cities, boroughs, towns and villages, as well as townships, are recognized by the constitution as classes for legislation, laws limited to either of such classes will not violate the prohibition of private, local or special laws "regulating the internal affairs of towns and counties."

But though the classification herein approved is legitimate, still it is urged that the true type of the several organizations must be judicially defined and that the applicability of any challenged charter, special or general, to the type must be discovered by the courts, otherwise it is said that the legislature has created or may create a class of municipalities by mere label. This is more strongly pressed as to the laws passed, since the amendments, for the incorporation of the different classes of municipalities. Boroughs were authorized in 1878 (*Gen. Stat., p.* 179), towns in 1888 and 1895 (*Gen. Stat., p.* 3492, 3525), villages in 1891 (*Gen. Stat., p.* 3724), cities in 1895 (*Gen. Stat., p.* 785) and 1897 (*Pamph.*

*L., p.* 46). It is asked, if these are valid, what is to hinder an indefinite extension of the practice and the authorization of municipal corporations as numerous as the different titles that can be devised by legislative ingenuity? The answer is that such a palpable evasion of the constitution can be dealt. with when it arises. To a *bona fide* attempt to deal with classes recognized by that instrument no exception can be taken. The only censure that may be deserved is the postponement of the plain constitutional duty to bring all members of each class to uniformity or to proper subordinate classification. In one instance only has that been attempted, namely, as to boroughs. *Pamph. L.* 1897, *p.* 285. It is not necessary now to pass upon the validity of incorporating statutes not so extensive. The Borough act of 1878 was upheld in the Supreme Court. *State* v. *Borough of Clayton,* 24 *Vroom* 277. None of the others cited has been questioned, but some not cited have been declared unconstitutional because of unwarranted sub-classification.

But whether or not these laws be valid, no possible exception can be taken to a law that brings in all of a class. Such a law was upheld in *Johnson* v. *Asbury Park, ubi supra,* and in *Crookall* v. *Matthews, ubi supra.* Nor can there well be any other judicial test than that of name. In effect this has already been declared by this court. In *Johnson* v. *Asbury Park,* 31 *Vroom* 427, 429, it was held that an act, then in question, "operates upon all the municipalities called boroughs in whatever mode their organization has been effected." In *Day* v. *Morristown,* 33 *Id.* 571; affirmed, *ante p.* 353, the contention was that Morristown, although incorporated as a town, was, at least by force of supplements to its charter, in fact a city and so within the purview of an act concerning cities. The opinion in the Supreme Court, adopted in this court, put the decision that the act did not apply to Morristown upon the legislative intent not to include it, but it is plain that this involves power to exclude that city if it be in fact a city simply because it is called in its charter a town. In *Crookall* v. *Matthews, ubi supra,* it was earnestly

contended that townships with special charters were in fact towns corporate and not townships within the range of a supplement to the General Township act, but this court held otherwise, although by statute a township with a special charter may, at any time, assume the name and style of town. *Gen. Stat., p.* 3635. In *Broome* v. *Telephone Co.,* 20 *Vroom* 624, the Supreme Court declared that an act, requiring designation of streets for telegraph poles in "incorporated cities or towns" should receive an interpretation broad enough to include all places having streets instead of country roads, "whether they are formally styled towns, townships, boroughs or villages." On affirmance of the judgment (*S. C.,* 21 *Id.* 432) this court refused to support that declaration—it being unnecessary to do so for the purposes of the decision—and at the present term has decided that the township of East Orange, although possessed of urban streets and powers over them far exceeding those of the normal township, is not an incorporated town within a like statute. The question, therefore, is settled that it is for the legislature, not the courts, to characterize the municipalities of the state; and the courts cannot inquire whether a municipality or class of municipalities is titular only. The classification of the legislature in that regard is conclusive.

On the second head there is no ground to challenge the generality of the act. Its subject is debt for street improvements. All existing securities are grouped in a funding scheme. It was not necessary to include all debts nor to anticipate future debts. Every town needing relief is afforded it, and that constitutes generality. This court has upheld a statute authorizing cities to annul assessments existing at the time of its enactment. *Jersey City* v. *Green,* 13 *Vroom* 627. The cases are quite analogous.

We find no difficulty in declaring the challenged law general. On the incidental questions discussed we are entirely satisfied with the opinion read for the Supreme Court, and the judgment will be affirmed.

Dixon, J.    The rational distinction between general laws and special laws, was, I think, in a measure abandoned by this court in the decision rendered in the case of *Day* v. *Morristown*, 33 *Vroom* 571, where it was held that a municipality, possessing all the substantial characteristics of a city, was not to be deemed a city if the legislature had named it a town, and for that reason it should be excluded from the operation of a law applicable to all cities.   The outcome of that decision must be that, for the purpose of our legislation, the municipalities named "cities" form one class and the municipalities named "towns" form another class.

Having gone thus far, the best stopping-place seems to be that pointed out by the opinion of Mr. Justice Collins, that the several sorts of municipalities mentioned in the constitution—cities, boroughs, towns, townships and villages—are distinct classes within the constitutional intent, and that the members of each class are to be ascertained by their legislative titles, at least if the titles be not palpably illusive.   On that ground the statute now under review should be deemed constitutional.

*For affirmance* — THE CHIEF JUSTICE, DEPUE, VAN SYCKEL, DIXON, GARRISON, LUDLOW, COLLINS, BOGERT, NIXON, HENDRICKSON, ADAMS, VREDENBURGH.    12.

*For reversal*—None.